# Exhibit A



**GREAT AMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

Miscellaneous Professional
**DECLARATIONS**
Liability Insurance Policy
for
**MISCELLANEOUS PROFESSIONAL LIABILITY
INSURANCE POLICY**

## THIS IS A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

**PLEASE NOTE:  CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY.**

Insurance is afforded by the company indicated below:

    Great American Fidelity Insurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Insurer**.

Policy Number: MPLE248620                    Policy Form Number:       D46100-A

Producer Name & Address:        RT SPECIALTY, LLC
                                500 WEST MONROE, 30TH FLOOR
                                CHICAGO, IL 60661-3774

Item 1.  **Named Insured:**              STOUT RISIUS ROSS LLC

Item 2.  **Mailing Address:**            150 WEST 2ND STREET

         City, State, Zip Code:          ROYAL OAK, MI 48067

Item 3.  **Policy Period**:    From:          9/1/2018          To:          9/1/2019
                                          *(Month, Day, Year)*                    *(Month, Day, Year)*
             (Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 1.)

Item 4.  **Limit of Liability** (inclusive of **Claim Expenses**):
         $5,000,000          Each **Claim**
         $5,000,000          Policy Aggregate

Item 5.  **Deductible** (inclusive of **Claim Expenses**):
         $100,000          Each **Claim**

Item 6.  **Premium:**
         ▮▮▮▮▮▮

Item 7.  **Retroactive Date** (if applicable):      Full Prior Acts
                                          *(Month, Day, Year)*

Item 8.  **Forms, Notices and Endorsements attached at policy effective date:**
         D41300        D41300        D41300        D41300        D41300        D41300        D41300        D41300
         D41710 (13)   D41712        D41712 (35)   D46712 (15)

Item 9.  **Professional Services:**
         Solely in the performance of providing technology services, valuation services, litigation consulting and services including preparation of QDRO's and tax returns, fairness opinion services, solvency opinion services, representing others in the sale, purchase or recapitalization of a business or its assets, private equity co-investment consulting services, real estate and personal property appraisals, receiver for various entities/persons focused on the management and/or dissolution of assets, forensic data recovery, expert witness services, legal management consulting, quantitative analytics management consulting, hosting, data management services and mergers & acquisitions consulting services.



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that Section III. of the Policy is amended by the addition of the following:

based on or arising out of a loss alleged to have resulted from the fluctuation in the market value of any of your assets investments;

based on or arising out of the **Insured** advising others by making warranties or guarantees as to the future value of any investments or alternative investment vehicles;

based on or arising out of the guaranteeing of the availability of funds, or specified rate of return/and or interest;

based on or arising out of an **Insured's** capacity as a director or of a client company, provided however, that this exclusion will not apply to Insured's services for a fee as an interim manager or turnaround manager for a client company;

 officer, interim manager or turn around manager of a client company;

based on or arising out of the formation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein;

based on or arising out of a cease and desist order, the insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurer, trust, organization or other vehicle directly or indirectly in which any **Insured** has placed or obtained insurance coverage or placed the funds of a client or account;

based on or arising out of services as an attorney or certified public accountant;

based on or arising out of any services for underwriting, placement, purchase, syndication or promotion of any debt, equity or other security instrument; or any services rendered as  underwriter, initial purchaser or placement agent; or of any debt, equity or other security instrument;

based on or arising out of any actuarial act, omission or assumption;

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:                        9/1/2018



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

**Section F. of Policy is amended per below**

**F.**   **"Damages"** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including statutory damages, punitive, multiplied, or exemplary damages, where it is deemed permitted under the laws and public policy of the **Applicable Jurisdiction** by law; or pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf.  However, **Damages** do not include:

(1)   taxes, fines, penalties, forfeitures, or court-imposed monetary sanctions imposed upon the Insured.

(2)   the return, restitution, reduction, compromise, or refund of commissions, fees, premiums, charges, gratuities, or other compensation paid to an **Insured**;

(3)   the cost to correct, complete, or re-perform any **Professional Services**;

(4)   the cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including services or injunctive relief; or

(5)   any amounts uninsurable as a matter of law or public policy.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:                              9/1/2018

D 41300  (05/13)                    Endorsement:   2                    Page 1 of 1



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

**Section VII. Is Amended per below**

**Section VII. Extended Reporting Periods**
**A.**      If this Policy is cancelled or nonrenewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, noncancelable **Extended Reporting Period** starting at the termination of the **Policy Period** if the **Named Insured** has not obtained another policy of errors and omissions insurance within sixty (60) days of the termination of the **Policy Period**. This automatic extended reporting period will terminate after sixty (60) days.

**B.**      If this Policy is cancelled or nonrenewed either by the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **Extended Reporting Period** of one, three, or five years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **Policy Period** by providing:

| | |
|---|---|
| (1) | Written notice to the **Company**; and |
| (2) | With the written notice, the following amount of additional premium: |
| (a) | For a one (1) year **Extended Reporting Period**, 75% of the annual premium for the Policy; |
| (b) | For a three (3) year **Extended Reporting Period**, 150% of the annual premium for the Policy; or |
| (c) | For a five (5) year **Extended Reporting Period**, 200% of the annual premium for the Policy. |
| (c) | For a five (5) year **Extended Reporting Period**, 200% of the annual premium for the Policy. |
| (D) | For a six  (6) year **Extended Reporting Period**, 225% of the annual premium for the Policy. |

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:   STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration                    Policy Number:  MPLE248620

Endorsement Effective Date:                      9/1/2018

D 41300  (05/13)                                   Endorsement:  3                 Page 1 of 2



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

The first sixty (60) days of the optional **Extended Reporting Period,** if it is purchased, shall run concurrently with the automatic **Extended Reporting Period.**

**C.**     The limit of liability of the **Company** for all **Claims** reported during the automatic and optional **Extended Reporting Periods** will be part of and not in addition to the limits of liability for the **Policy Period** set forth in Item 4. in the Declarations.

**D.**     There is no right to any **Extended Reporting Period** if the **Company** cancels or refuses to renew this Policy due to:

(1)     Nonpayment of amounts due under this Policy;
(2)     Noncompliance by the **Insured** with any of the terms and conditions of this Policy;
(3)     Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this Policy.

**E.**     The **Extended Reporting Period** will not be construed to be a new policy and any **Claim** submitted during such period will otherwise be governed by this Policy.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:   STOUT RISIUS ROSS LLC

Policy Period:   9/1/2018 to Policy Expiration           Policy Number:   MPLE248620

Endorsement Effective Date:                      9/1/2018



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

**Section III. Exclusions is Amended per below**
This Policy does not apply to any **Claim**:

**B.**        for based on or arising out of **Bodily Injury** or **Property Damage**;

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration                    Policy Number:  MPLE248620

Endorsement Effective Date:                              9/1/2018



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

**Section III. Exclusions is Amended per below:**

**I.**　　　based on or arising out of the gaining of any personal profit or advantage to which the **Insured** is not legally entitled.

The **Company** will provide the **Insured** with a defense of such **Claim** unless and until a final adjudication or finding of fact against, or admission by, such **Insured** establishes that such **Insured** committed such dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission. Such defense will not waive any of the **Company's** rights under this Policy. Upon establishing that an **Insured** committed a dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission, the **Company** will have the right to seek recovery of any **Claim Expenses** incurred on behalf of any **Insured** that committed such acts or omissions.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration　　　　　　Policy Number:  MPLE248620

Endorsement Effective Date:　　　　　　　　　　9/1/2018

D 41300  (05/13)　　　　　　　　　　　Endorsement:  5　　　　Page 1 of 1



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

Technology Services Endorsement

Technology Product means any:

(A) communication, computer, data security, electronic, information, Internet, network or website:
(1) equipment or parts; or
(2) programs or systems; and
(B) software, data or other information in electronic form.

Technology Services means the following services performed by or on behalf of an **Insured** for others for a fee in connection with any Technology Product:

(A) technology consulting services;
(B) information systems or network analysis, design, programming or integration;
(C) software design, distribution, servicing, installation and maintenance;
(D) website design, programming or maintenance;
(E) training; and
(F) database design and the caching, collecting, compiling, processing, mining, recording or analysis of data.

Insured:   STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:                              9/1/2018

D 41300  (05/13)                          Endorsement:   6                  Page 1 of 1



Miscellaneous Professional
Liability Insurance Policy

## AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:
In consideration of the premium charged, the following changes are made to the Policy:

(1)    Section II. is amended by the addition of the following:

**"Merger & Acquisition Consulting and Business Broker Services"** means:

(1)    the rendering of advice or recommendations regarding any actual, potential, attempted or threatened entity merger or consolidation, business combination, acquisition, sale, purchase, divestiture or distribution, tender or exchange offer, proxy contest or solicitation, leverage or management buyout, partnership, minority investment, joint or collaborative venture, dissolution, liquidation, rehabilitation, conservatorship, insolvency proceeding, reorganization, restructuring, recapitalization, spin-off, primary or secondary private offering of debt or securities or other instruments or evidence of indebtedness, or sale of assets or operations, of any enterprise or entity in which the **Insured** has no equity ownership interest; or any effort to raise or furnish capital or financing for any enterprise or entity in which the **Insured** has no equity ownership interest  with respect to any of the foregoing activities; and

(2)    the review, analysis or rendering of valuations of fairness opinions regarding the following:

(a)    any transaction, business enterprise or entity; or
(b)    any of the assets or liabilities of, or interests in, any transaction, enterprise or entity in which the **Insured** has no equity or ownership interest therein.

**"Underwriting"** means:

the process of analyzing, calculating and structuring any loan, security or financial instrument or other evidence of indebtedness.

(2)    Section III. is amended by the addition of the following:

based on or arising out of any **Underwriting**, placement, securitizing, syndicating, promoting, converting, selling, purchasing or market making (as defined in Section 3(A)(38) of the Securities Exchange Act of 1934, as amended) of any security or instrument or other evidence of

---

Insured:   STOUT RISIUS ROSS LLC

Policy Period:   9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:                        9/1/2018

---

D 41300  (05/13)                          Endorsement:  7          Page 1 of 3



Miscellaneous Professional
Liability Insurance Policy

**GREATAMERICAN.**
**INSURANCE GROUP**

## AMENDATORY ENDORSEMENT

based on or arising out of the acquisition, sale, conversion or transfer of securities, assets or liabilities by an **Insured** for such **Insured's** own account or as an original purchaser in a transaction under Regulation 144 under the Securities Act of 1933, as amended;

based on or arising out of the forming, syndicating, operating, administrating, or rolling up of a limited partnership or real estate investment trust;

based on or arising out of the use by any **Insured** of, or aiding and abetting or any other participation by any **Insured** in, the use of non-public information in a manner prohibited by the laws of the United States of America including but not limited to the Insider Trading and Securities Fraud Enforcement Act of 1988, as amended, section 10(b) of the Securities Exchange Act of 1934, as amended, and Rule 10(b)(5) promulgated thereunder; or prohibited by the laws of the any state, territory, country or subdivision thereof; or prohibited by the laws of any other domestic or foreign jurisdiction, or any rules or regulations promulgated under any of the foregoing laws;

based on or arising out of any disclosure, statement and/or omission, made in connection with any activity outlined in Section III. (i) through (iv) above;

based on or arising out of attestation services  performed by any **Insured,** including any engagement or service performed solely in the role of an accountant or auditor in accordance with professional or regulatory standards for such engagements and resulting in written reports that express a conclusion about the reliability of an assertion (for example, financial statements and/or prospective financial statements), which attestation services are the responsibility of another party. Examples of attestation services include, but are not limited to, the following: examinations, audits, reviews, and agreed-upon procedures engagements;

based on or arising out of the **Insured's** actual or alleged performance of, or failure to perform, legal or actuarial services;

based on or arising out of the **Insured's** actual guarantee, promise or warranty, with respect to the future value of any real, personal or intellectual property;

based on or arising out **Merger & Acquisition and Business Broker Services** performed by an **Insured** for more than one party in the same or related transaction; or



Miscellaneous Professional
Liability Insurance Policy

# AMENDATORY ENDORSEMENT

based on or arising out of the actual or alleged placement, promotion, conversion, sale, or purchase by any **Insured** of any security or financial instrument or other evidence of indebtedness, provided that this exclusion shall not apply to the **Insured's** advice or recommendations rendered in connection with such placement, promotion, conversion, sale or purchase.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



Miscellaneous Professional
Liability Insurance Policy

## AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

Section VIII. Notice of Claim, is amended to read as follows:

A. The CEO, CFO, GC or organizational equivalents, as a condition precedent to the obligations of the **Company** under this Policy, will give written notice to the **Company** as soon as reasonably possible during the **Policy Period** of any **Claim** made against the **Insured**.

B. The **Company** further agrees that the CEO, CFO, GC or organizational equivalents may have up to, but not to exceed, sixty (60) days after the Policy expiration to report in writing to the **Company** a **Claim** made against the **Insured** during the **Policy Period**, if the reporting of such **Claim** is as soon as reasonably possible.

C. If during the **Policy Period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **Claim** against any **Insured**, including but not limited to any notice, advice, or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all available particulars, including:

(1) the specific act or omission;

(2) the dates and persons involved;

(3) the identity of anticipated or possible claimants;

(4) potential **Damages** or injury;

then any **Claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**. Said documents and information should be mailed or emailed to the **Company**.

---

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:          9/1/2018

---



Miscellaneous Professional
Liability Insurance Policy

## AMENDATORY ENDORSEMENT

D. Notice to the **Company** as required in Sections VIII.A.,VIII.B. and VIII.C. shall be:

(1) Emailed to: PLDClaims@gaic.com
<mailto:PLDClaims@gaic.com>; or

(2) Mailed to: GREAT AMERICAN INSURANCE GROUP
PROFESSIONAL LIABILITY DIVISION
ATTN:  CLAIMS DEPARTMENT
P.O. BOX 1178
CINCINNATI, OH 45201

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



Miscellaneous Professional
Liability Insurance Policy

## UNSOLICITED DISSEMINATION EXCLUSION

In consideration of the premium charged, the following changes are made to the Policy:

Section III. of the Policy is amended by the addition of the following:

based on or arising out of any unsolicited dissemination of faxes, telephone calls, text messages or e-mails to multiple, actual or prospective customers of the **Insured** or any other third party, including but not limited to any **Claim** alleging any actual or alleged violation of the Telephone Consumer Protection Act, any federal or state anti-spam statutes, or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  MPLE248620

Endorsement Effective Date:9/1/2018

D 41710(13)  (01/17)                     Endorsement:  9          Page 1 of 1



Miscellaneous Professional
Liability Insurance Policy

## COMPUTER SERVICES WITH BROADFORM
## PERSONAL INJURY ENDORSEMENT

In consideration of the premium charged, the following changes are made to the Policy:

(1)     Section II. M. is deleted and replaced with the following:

"**Personal Injury**" means injury other than **Bodily Injury** arising out of one or more of the following offenses by reason of an act or omission in the performance of **Professional Services**:

(1)     false arrest, detention or imprisonment;

(2)     malicious prosecution;

(3)     the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

(4)     (a)     oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

         (b)     oral or written publication, in any manner, of material that violates a person's right of privacy;

(5)     plagiarism, piracy or misappropriation of ideas or style of doing business; or

(6)     infringement or misappropriation of copyright, title, slogan, trademark, trade name, trade dress, logo, service mark or service name;

provided, however, that **Personal Injury** shall not include any oral or written publication, in any manner which arises out of advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

(2)     Section III. is amended by the addition of the following:

based on or arising out of deceptive trade practices, dilution and civil actions for consumer fraud;

based on or arising out of any mechanical or electrical failure, including any electrical power interruption or surge, brownout, blackout, short circuit, over voltage, induction, or power fluctuations;

---

Insured:  STOUT RISIUS ROSS LLC

Policy Period:  9/1/2018 to Policy Expiration                    Policy Number:  MPLE248620

Endorsement Effective Date:                                    9/1/2018

---

D 41712(8)    (02/14)                          Endorsement:   10              Page 1 of 2



Miscellaneous Professional
Liability Insurance Policy

## COMPUTER SERVICES WITH BROADFORM
## PERSONAL INJURY ENDORSEMENT

based on or arising out of the failure to prevent unauthorized access to or use of an electronic system or program, unless such unauthorized access is the result of a malfunction of any **Insured's** software products;

based on or arising out of the unauthorized use of, or tampering with data or systems; or

based on or arising out of costs, expenses or damages for the withdrawal or recall of any **Insured's** electronic products or systems or work compiled by or on behalf of any **Insured**, or any property of which such products or work form a part.

(3)    Section III. K. is deleted and replaced with the following:

**K.**    based on or arising out of any infringement of patent.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



Miscellaneous Professional
Liability Insurance Policy

## NETWORK SECURITY BREACH AND PRIVACY BREACH EXCLUSION

In consideration of the premium charged, it is understood and agreed that the following changes are made to the Policy:

1.   Section II. of the Policy is amended with the addition of the following:

    **"Network Security Breach or Privacy Breach"** means:

    (1)   the failure by the **Insured** to properly handle, manage, store, destroy or otherwise control confidential corporate or personally identifiable information;

    (2)   any violation of the **Insured's** privacy policy, or any violation by the **Insured** of:

        (a)   the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

        (b)   the Gramm-Leach-Bliley Act of 1999;

        (c)   the California Security Breach Notification Act (CA SB 1386);

        (d)   Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. §45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce; or

        (e)   any violation of any other similar state, federal, and/or foreign identity theft and privacy protection legislation that requires entities that collect personal information to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that personal information has potentially been compromised; or

    (3)   a failure in network security, including but not limited to activities performed by the Insured to protect against unauthorized access to, unauthorized use of, a denial of service, attack directed against, or transmission of malicious code to the Insured's computer system;

2.   Section III. of the Policy is amended with the addition of the following:

    Based on or arising out of an actual or alleged **Network Security Breach or Privacy Breach**.

---

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

---

Insured:   STOUT RISIUS ROSS LLC

Policy Period:   9/1/2018 to Policy Expiration                   Policy Number:   MPLE248620

Endorsement Effective Date:9/1/2018

---



Miscellaneous Professional
Liability Insurance Policy

## NETWORK LIABILITY ENDORSEMENT

In consideration of the premium charged, the following changes are made to the Policy:

(1)     Section I. is deleted and replaced with the following:

### Section I. Insuring Agreement

The **Company** will pay on behalf of the **Insured** all sums in excess of the **Deductible** that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** and reported in writing to the **Company** during the **Policy Period** or **Extended Reporting Period**, by reason of an act or omission, including **Personal Injury** or **Network Liability**, in the performance of **Professional Services** by the **Insured** or by any person for whom the **Insured** is legally responsible, provided that:

   **A.**     No such act or omission, or **Related Act or Omission**, was committed prior to the **Retroactive Date**; and

   **B.**     Prior to the inception date of the first policy issued by the **Company,** and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of a **Claim.**

The **Company** has the right and duty to defend any **Claim** against the **Insured** provided such **Claim** is made or suit is brought in the United States of America, its territories or possessions, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** has the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary.

The **Insured**, not the **Company**, will be obligated to assume charge of the investigation and defense of any **claim** where suit is brought outside of the United States of America, its territories or possessions. The **Company**, however, has the right to approve, in advance, in writing, the retention of any defense counsel or to participate with the **Insured** in the choice of arbitrators or mediators. The **Company** also has the right to be kept fully informed, or to have its designated representative kept fully informed, by the **Insured** concerning the conduct of such defense or such arbitration or mediation. The **Insured** will make available to the **Company** such information and access to records as the **Company** requires.

(2)     Section II. is amended by the addition of the following:

### "Network Liability" means:
   (1)     the inability of an authorized third party to gain access to a **Computer System**;

---

Insured:   STOUT RISIUS ROSS LLC

Policy Period:   9/1/2018 to Policy Expiration          Policy Number:   MPLE248620

Endorsement Effective Date:                         9/1/2018

---

D46712(15)   (01/18)                    Endorsement:   12              Page 1 of 2



Miscellaneous Professional
Liability Insurance Policy

## NETWORK LIABILITY ENDORSEMENT

(2)    the failure to prevent **Unauthorized Access** to a **Computer System** that results in:

    (a)    the destruction, alteration, deletion or corruption of electronic data on a **Computer System**; or

    (b)    **Removal of Data** from a **Computer System**; or

    (c)    denial of service attacks against Internet sites or computers; or

(3)    the failure to prevent transmission of **Malicious Code** from a **Computer System** to third party computers and systems.

**"Computer System"** means computer hardware, software, networks, applications, associated electronic devices, electronic data storage devices, input and output devices, and back up facilities operated by and either owned by or leased to the **Insured** by written contract for such purposes.

**"Malicious Code"** means any unauthorized, corrupting, or harmful virus, Trojan Horse, worms, logic bombs or other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

**"Removal of Data"** means the unauthorized taking, misuse or disclosure of information, including but not limited to charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, personal, private, and confidential information on a **Computer System.**

**"Unauthorized Access"** means the use of or access to a **Computer System** by a person not authorized to do so by the **Insured** or the authorized use of or access to a **Computer System** in a manner not authorized by the **Insured**.

(3)    Section III. is amended by the addition of the following:

based on, arising out of, resulting from, or alleging any failure or malfunction of electrical or telecommunications infrastructure or

based on, arising out of, resulting from, or alleging any fire, flood, earthquake, volcanic eruption, explosion, lighting, wind, hail, tidal wave, landslide, act of God or other physical event;

brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any similar governmental entity, in such entity's regulatory or official capacity; or

based on, arising out of, resulting from, or alleging any unsolicited electronic dissemination of faxes or emails.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



GREAT**AMERICAN**®

**INSURANCE GROUP**

*Great American Fidelity Insurance Company*

Miscellaneous Professional
Liability Insurance Policy



Miscellaneous Professional
Liability Insurance Policy

# Miscellaneous Professional Liability Insurance Policy

Great American Fidelity Insurance Company – Professional Liability Division:
1350 Broadway, Suite 1510, New York, NY 10018

## Table of Contents

| | | |
|---|---|---|
| I. | Insuring Agreement | Page 1 |
| II. | Definitions | Page 1 |
| III. | Exclusions | Page 4 |
| IV. | Limits of Liability | Page 6 |
| V. | Deductible | Page 6 |
| VI. | Defense and Settlements | Page 7 |
| VII. | Extended Reporting Periods | Page 7 |
| VIII. | Notice of Claim | Page 8 |
| IX. | General Conditions | Page 9 |
| | (A) Assistance and Cooperation | Page 9 |
| | (B) Action Against the Company | Page 9 |
| | (C) Bankruptcy | Page 9 |
| | (D) Other Insurance | Page 9 |
| | (E) Subrogation | Page 10 |
| | (F) Changes | Page 10 |
| | (G) Cancellation/Nonrenewal | Page 10 |
| | (H) Territory | Page 10 |
| | (I) Named Insured Sole Agent | Page 11 |
| | (J) Entire Contract | Page 11 |
| | (K) Notices | Page 11 |
| | (L) Assignment | Page 11 |
| | (M) Innocent Insureds | Page 11 |
| | (N) Conformity to Law | Page 11 |
| | (O) Representative of Insurer | Page 11 |
| X. | Service of Suit | Page 12 |

GREAT AMERICAN FIDELITY INSURANCE COMPANY®

Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (a stock insurance company, hereinafter called the **Company**), and subject to all terms, conditions, and limitations of the Policy, the **Insured** and the **Company** agree as follows.

**Section I. Insuring Agreement**

The **Company** will pay on behalf of the **Insured** all sums in excess of the **Deductible** that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** and reported in writing to the **Company** during the **Policy Period** or **Extended Reporting Period**, by reason of an act or omission, including **Personal Injury**, in the performance of **Professional Services** by the **Insured** or by any person for whom the **Insured** is legally responsible, provided that:

    **A.**    No such act or omission, or **Related Act or Omission**, was committed prior to the **Retroactive Date**; and

    **B.**    Prior to the inception date of the first policy issued by the **Company,** and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of a **Claim.**

The **Company** has the right and duty to defend any **Claim** against the **Insured** provided such **Claim** is made or suit is brought in the United States of America, its territories or possessions, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** has the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary.

The **Insured**, not the **Company**, will be obligated to assume charge of the investigation and defense of any **claim** where suit is brought outside of the United States of America, its territories or possessions. The **Company**, however, has the right to approve, in advance, in writing, the retention of any defense counsel or to participate with the **Insured** in the choice of arbitrators or mediators. The **Company** also has the right to be kept fully informed, or to have its designated representative kept fully informed, by the **Insured** concerning the conduct of such defense or such arbitration or mediation. The **Insured** will make available to the **Company** such information and access to records as the **Company** requires.

**Section II. Definitions**

**A.**    "**Applicable Jurisdiction**" shall mean that jurisdiction most favorable to the insurability of punitive or exemplary damages provided that the jurisdiction must be:

    (1)    where the punitive or exemplary damages were awarded or imposed;

    (2)    where any act which forms the basis of the **claim** took place; or

    (3)    where any Insured is incorporated, resides, or has its principal place of business.

B.  **"Bodily Injury"** means physical injury, sickness, or disease sustained by any person including death resulting from any of these at any time. **Bodily Injury** also means mental illness, mental anguish, or emotional distress, pain or suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease, or death of any person.

C.  **"Claim"** means:

(1)   a written demand for money or services received by an **Insured**; or

(2)   a civil proceeding in a court of law, or arbitration proceeding, against the **Insured**, commenced by the service of summons or receipt of an arbitration demand;

arising out of an act or omission in the performance of **Professional Services**.

D.  **"Claim Expenses"** means:

(1)   Fees charged by attorneys designated by the **Company** or designated by the **Insured** with the **Company's** prior written consent;

(2)   All other reasonable and necessary fees, costs, and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense, or appeal of a **Claim,** if incurred by the **Company** or by the **Insured** with the **Company's** prior written consent; and

(3)   Premiums on appeal bonds, attachment bonds, or similar bonds; however, the **Company** is not obligated to apply for or furnish any such bond.

**Claim Expenses** will be paid first and will reduce the limit of liability available to pay **Damages. Claim Expenses** do not include fees, costs, or expenses of employees or officers of the **Company,** or salaries, loss of earnings or other remuneration by or to any **Insured.**

E.  **"Company"** means the insurance company identified in the Declarations.

F.  **"Damages"** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including statutory damages, punitive, multiplied, or exemplary damages, where it is deemed permitted under the laws and public policy of the **Applicable Jurisdiction** by law; or pre-judgment and post-judgment interest.   **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf.  However, **Damages** do not include:

(1)   taxes, fines, penalties, forfeitures, or court-imposed monetary sanctions;

(2)   the return, restitution, reduction, compromise, or refund of commissions, fees, premiums, charges, gratuities, or other compensation paid to an **Insured**;

(3)   the cost to correct, complete, or re-perform any **Professional Services**;

(4)   the cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including services or injunctive relief; or

(5)   any amounts uninsurable as a matter of law or public policy.

G.  **"Deductible"** means the amount shown in Item 5. in the Declarations.

H.  **"Disciplinary Action"** means an action or proceeding brought against the **Insured** by or in front of any regulatory agency, disciplinary board, peer review committee, supervising court, or similar governing entity, alleging misconduct in providing **Professional Services**.  **Disciplinary Action** does not include criminal charges.

**I.**   **"Extended Reporting Period"** means the period of time after the end of the **Policy Period** for reporting **Claims** to the **Company** that are made against the **Insured** during the applicable **Extended Reporting Period** by reason of an act or omission, which was committed prior to the end of the **Policy Period** and on, or subsequent to, the **Retroactive Date**, and is otherwise covered by this Policy.

**J.**   **"Insured"** means the **Named Insured** and any of the persons or entities listed below, but only while in the performance of **Professional Services** on behalf of the **Named Insured** for clients of the **Named Insured:**

    (1)   Any **Subsidiary** or **Newly Acquired Subsidiary**;

    (2)   Any present or former partner, principal, shareholder, member, officer, director, or employee of the **Named Insured**, a **Subsidiary** or a **Newly Acquired Subsidiary;**

    (3)   Independent contractors, but only for **Professional Services** performed on behalf and at the direction of the **Named Insured**, and only if the **Named Insured** has agreed to provide insurance for the independent contractor's **Professional Services;**

    (4)   Any leased employee, but only while acting under the direct supervision and exclusively on behalf of the **Named Insured.**

    (5)   The estate, heirs, executors, administrators, assigns and legal representatives of any person identified in (2), (3) or (4) above in the event of such **Insured's** death, incapacity, insolvency, or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy.

    (6)   The lawful spouse of any person identified in (2), (3) or (4) above solely by reason of:

        (a)   such spousal status or domestic partner status; or

        (b)   such spouse's or domestic partner's ownership interest in property or assets that are sought as recovery for a **Claim**.  Any sums for which such spouse or domestic partner becomes legally obligated to pay on account of such **Claim** shall be deemed **Damages**.

**K.**   **"Limit of Liability"** means the applicable limit shown in Item 4. in the Declarations as described in Section IV. Limits of Liability.

**L.**   **"Named Insured"** means the persons or entities specified in Item 1. in the Declarations.

**M.**   **"Newly Acquired Subsidiary"** means any entity newly formed or acquired by the **Named Insured** during the **Policy Period** in which the **Named Insured** has more than 50% of the legal or beneficial interest, but only upon the conditions that:

    (1)   Within 90 days of such formation or acquisition, the **Named Insured** has provided the **Company** with full particulars of such **Newly Acquired Subsidiary** and the **Company** has agreed in writing to insure such **Newly Acquired Subsidiary,** but the **Company** shall not be required to insure such **Newly Acquired Subsidiary;**

    (2)   **The Named Insured** has paid the additional premium, if any, charged by the **Company** and has agreed to any amendment of the provisions of this Policy; and

    (3)   The **Company** will only provide coverage with respect to a **Claim** arising out of an act or omission in the performance of **Professional Services** when the act or omission is committed on or after the date such **Newly Acquired Subsidiary** became a **Newly Acquired Subsidiary** and prior to the date such **Newly Acquired Subsidiary** ceased to be a **Newly Acquired Subsidiary.**  An entity ceases to be a **Newly Acquired Subsidiary** under this Policy on the date during the **Policy Period** that the **Named Insured's** legal or beneficial interest in such entity becomes less than 50%.

N.  **"Personal Injury"** means injury other than **Bodily Injury** arising out of one or more of the following offenses by reason of an act or omission in the performance of **Professional Services:**

  (1)  False arrest, detention, or imprisonment;

  (2)  Malicious prosecution;

  (3)  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, if such eviction, entry or invasion is by or on behalf of its owner, landlord or lessor;

  (4)  (a)  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

     (b)  Oral or written publication, in any manner, of material that violates a person's right of privacy, except oral or written publication, in any manner which arises out of advertising, broadcasting, or telecasting activities conducted by or on behalf of any **Insured.**

O.  **"Policy Period"** means the period of time from the effective date shown in Item 3. in the Declarations to the earliest of the date of termination, expiration, or cancellation of this Policy.

P.  **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Q.  **"Property Damage"** means:

  (1)  Physical Injury to tangible property, including all resulting loss of use of that property; or

  (2)  Loss of use of tangible property that is not physically injured.

R.  **"Professional Services"** means those services specified in Item 9. in the Declarations performed by an **Insured** for others for a fee.

S.  **"Related Acts or Omissions"** means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice, or decision.

T.  **"Related Claims"** means all **Claims** arising out of a single act or omission or **Related Acts or Omissions** in the performance of **Professional Services**.

U.  **"Retroactive Date"** means the date shown in Item 7. in the Declarations, on or after which an act or omission must have been committed for coverage under this Policy to apply.

V.  **"Security Incident"** means the unauthorized access or, or use of data containing private or confidential information in connection with the performance of **Professional Services** which results in the violation of any privacy regulation.

W.  **"Subsidiary"** means any entity of which the **Named Insured** owns, either legally or beneficially, more than a 50% interest in such entity. On the date during the **Policy Period** that the **Named Insured's** legal or beneficial ownership interest in such entity becomes less than 50%, such entity will cease to be a **Subsidiary** under this Policy. In such event, coverage will be provided under this Policy, but only with respect to acts or omissions committed prior to such date in accordance with all other terms and conditions of this Policy. No coverage will be afforded under this Policy with respect to **Claims** made against an **Insured** based on any act or omission that was committed on or subsequent to such date.

**X.**     "**Supplementary Payments**" means the payments set forth in Sections V.E.(1), (2) and (3).

**Section III. Exclusions**

This Policy does not apply to any **Claim**:

**A.**     based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission by an **Insured**. The **Company** will provide the **Insured** with a defense of such **Claim** unless and until a final adjudication or finding of fact against, or admission by, such **Insured** establishes that such **Insured** committed such dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission. Such defense will not waive any of the **Company's** rights under this Policy. Upon establishing that an **Insured** committed a dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission, the **Company** will have the right to seek recovery of any **Claim Expenses** incurred on behalf of any **Insured** that committed such acts or omissions.

**B.**     based on or arising out of **Bodily Injury** or **Property Damage**;

**C.**     based on or arising out of discrimination, humiliation, harassment, or misconduct, including but not limited to **Claims** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status, or sexual preference. The **Company** will provide the **Insured** with a defense of such **Claim** and pay **Claim Expenses** for any suit which is brought alleging such discrimination as a single allegation in a multiple allegation suit, provided any such other allegation is covered under this Policy;

**D.**     based on or arising out of **Professional Services** performed for or by any business enterprise not named in Item 1. in the Declarations if on or after the date or time of the act or omission giving rise to such **Claim**:

    (1)     Any **Insured** controlled, owned, operated, or managed such entity; or

    (2)     Any **Insured** was an owner, partner, member, director, officer, or employee of such entity.

Control of or ownership in a business enterprise is presumed if any **Insured** owned or held 10% or more of the equity and/or debt instruments of such enterprise;

**E.**     by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder;

**F.**     based on or arising out of actual or alleged violation of:

    (1)     The Employee Retirement Income Security Act of 1974;

    (2)     The Securities Act of 1933;

    (3)     The Securities Act of 1934;

    (4)     Any state Blue Sky or Securities law;

or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations, including any **Claim** based upon common law principles of liability;

**G.** based on or arising out of, whether suddenly or over a long period of time:

    (1) The actual, alleged or threatened emission, discharge, dispersal, seepage, release, or escape of **Pollutants;** or

    (2) Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization, or cleanup of **Pollutants**.

However, this exclusion shall not apply to **Claims** arising out a failure to disclose **Pollutants** during the performance of **Professional Services**.

**H.** based on or arising out of liability of others assumed by the **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

**I.** based on or arising out of the gaining of any personal profit or advantage to which the **Insured** is not legally entitled.

**J.** based on or arising out of any actual or alleged anti-trust law violation or any agreement or conspiracy to restrain trade; or

**K.** based on, arising out of or related to actual or alleged misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

## Section IV. Limits of Liability

**A.** Subject to Paragraph B. below, the **Company's Limit of Liability** for all **Damages** and **Claim Expenses** from each **Claim** first made and reported in writing to the **Company** during the **Policy Period** will not exceed the amount shown in Item 4. in the Declarations for "Each **Claim**."

**B.** The **Company's Limit of Liability** for all **Damages** and **Claim Expenses** from all **Claims** first made and reported in writing to the **Company** during the **Policy Period** will not exceed the aggregate amount shown in Item 4. in the Declarations as the "Policy Aggregate." The Policy Aggregate **Limit of Liability** is the maximum amount the **Company** will pay under this Policy for **Damages** and **Claim Expenses** regardless of the number of **Insureds**, **Claims** made, or claimants.

## Section V. Deductible

**A.** The **Deductible** amount shown in Item 5. in the Declarations is the **Insured's** obligation for each **Claim** and applies to the payment of **Damages** and **Claim Expenses**. The **Deductible** will be paid by the **Named Insured**. The **Limits of Liability** are in addition to and in excess of the **Deductible**.

**B.** **Related Claims** made against the **Insured** and reported in writing to the **Company** under this Policy or under any renewal of this Policy will be considered a single **Claim** first made and reported to the **Company** during the **Policy Period** in which the earliest of the **Related Claims** was first made and reported in writing to the **Company**. A single **Deductible** and a single Each **Claim Limit of Liability** shall apply to any such single **Claim**.

**C.** The **Named Insured's** obligation to pay the **Deductible** shall be reduced by ten percent (10%) for each prior twelve month period of continuous professional liability insurance coverage provided by the **Company** to the **Named Insured**, of which this Policy is a renewal, replacement or successor in time, in which the **Company** did not pay any **Claim Expenses**, **Damages**, or **Supplementary Payments** under such prior insurance coverage, but such reduction shall not exceed the lesser of fifty percent (50%) of the **Deductible** or $10,000 for each **Claim** under this Policy. This reduction shall not apply to any **Claim** made during the **Extended Reporting Period** and shall not apply to any **Claim** as to which the **Named Insured** is entitled to a **Deductible** reimbursement or credit under paragraph D. below .

**D.**     If a **Claim** made during the **Policy Period** is resolved by agreement, with the consent of the **Named Insured** and the **Company**, as reflected in a settlement agreement, order, dismissal, or judgment, within one (1) year following the date that the **Claim** is reported in writing to the **Company**, the **Named Insured** will be reimbursed or credited fifty percent (50%) of the **Deductible**, but not to exceed a maximum reimbursement of $25,000 per **Policy Period** for all such **Claims** resolved or concluded in accordance with this Paragraph D.

**E.**     **Supplementary Payments** are not subject to the **Deductible** and are in addition to the **Limits of Liability**.

(1)     The **Company** will pay up to $750.00 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the **Company's** request, at a trial, hearing, mediation, or arbitration proceeding involving a **Claim** against the **Insured**. The maximum amount payable, regardless of the number of trials, hearings, mediations, or arbitration proceedings or the number of **Insureds**, shall be $12,500 per **Claim** and $25,000 for all **Claims** during the **Policy Period**.

(2)     The **Company** will reimburse the **Insured** for reasonable attorney fees, costs, and expenses incurred in responding to a **Disciplinary Action** that is first received by the **Insured** and reported in writing to the **Company** during the **Policy Period** by reason of an act, error, or omission in the performance of **Professional Services**. The maximum amount payable, regardless of the number of **Disciplinary Actions** or the number of **Insureds**, shall be $25,000 per **Policy Period**. The **Company** shall not be obligated to defend any **Disciplinary Action**, or pay any fine, penalty, or award resulting from any **Disciplinary Action**.

(3)     The **Company** will pay expenses incurred while assisting the **Insured** in responding to a subpoena which the **Insured** first receives and reports in writing to the **Company** during the **Policy Period** resulting from the performance of **Professional Services** by the **Insured.** The maximum amount payable regardless of the number of subpoenas or number of **Insureds** shall be $25,000.

(4)     The **Company** will reimburse the **Named Insured** for the following response expenses incurred by the **Named Insured** in responding to a Security Incident the **Named Insured** first discovers and reports in writing to the **Company** during the **Policy Period**. The maximum payable shall be $25,000 per **Security Incident** and $25,000 for all **Security Incidents** discovered and reported during the Policy Period, regardless of the number of Security Incidents or the number of Insureds. **Security Incident** response expenses are:

(a)     reasonable fees and expenses by cyber forensic analysts to determine the extent of the **Security Incident**; or

(b)     reasonable fees and expenses by attorneys or consultants to comply with federal, state or local privacy laws requiring that notification and credit monitoring services be provided to individuals when the security, confidentiality, or integrity of their person information has been compromised by the **Security Incident;**

**Section VI. Defense and Settlement**

**A.**     The **Company** is not obligated to pay any **Damages** or **Claim Expenses** or to defend or continue to defend any **Claim** after the applicable **Limit of Liability** has been exhausted by the payment of **Damages** or **Claim Expenses** or any combination thereof; or after the **Company** has deposited the remaining available **Limit of Liability** into a court of competent jurisdiction or tendered the remaining available **Limit of Liability** to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured.**

**Section VII. Extended Reporting Periods**

A.    If this Policy is cancelled or nonrenewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, noncancelable **Extended Reporting Period** starting at the termination of the **Policy Period** if the **Named Insured** has not obtained another policy of errors and omissions insurance within sixty (60) days of the termination of the **Policy Period**. This automatic extended reporting period will terminate after sixty (60) days.

B.    If this Policy is cancelled or nonrenewed either by the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **Extended Reporting Period** of one, three, or five years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **Policy Period** by providing:

    (1)    Written notice to the **Company**; and

    (2)    With the written notice, the following amount of additional premium:

        (a)    For a one (1) year **Extended Reporting Period**, 75% of the annual premium for the Policy;

        (b)    For a three (3) year **Extended Reporting Period**, 150% of the annual premium for the Policy; or

        (c)    For a five (5) year **Extended Reporting Period**, 200% of the annual premium for the Policy.

    The first sixty (60) days of the optional **Extended Reporting Period,** if it is purchased, shall run concurrently with the automatic **Extended Reporting Period.**

C.    The limit of liability of the **Company** for all **Claims** reported during the automatic and optional **Extended Reporting Periods** will be part of and not in addition to the limits of liability for the **Policy Period** set forth in Item 4. in the Declarations.

D.    There is no right to any **Extended Reporting Period** if the **Company** cancels or refuses to renew this Policy due to:

    (1)    Nonpayment of amounts due under this Policy;

    (2)    Noncompliance by the **Insured** with any of the terms and conditions of this Policy;

    (3)    Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this Policy.

E.    The **Extended Reporting Period** will not be construed to be a new policy and any **Claim** submitted during such period will otherwise be governed by this Policy.

**Section VIII. Notice of Claim**

A.    The **Insured,** as a condition precedent to the obligations of the **Company** under this Policy, will give written notice to the **Company** as soon as reasonably possible during the **Policy Period** of any **Claim** made against the **Insured.**

B.    The **Company** further agrees that the **Insured** may have up to, but not to exceed, ninety (90) days after the Policy expiration to report in writing to the **Company** a **Claim** made against the **Insured** during the **Policy Period,** if the reporting of such **Claim** is as soon as reasonably possible.

C.    If during the **Policy Period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **Claim** against any **Insured,** including but not limited to any notice, advice, or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all available particulars, including:

(1)     the specific act or omission;

(2)     the dates and persons involved;

(3)     the identity of anticipated or possible claimants;

(4)     the circumstances by which the **Insured** first became aware of the possible **Claim;** and

(5)     potential **Damages** or injury;

then any **Claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company.**  Said documents and information should be mailed or emailed to the **Company.**

**D**.     Notice to the **Company** as required in Sections VIII.A.,VIII.B. and VIII.C. shall be:

(1)     Emailed to:     PLDClaims@gaig.com; or

(2)     Mailed to:     GREAT AMERICAN INSURANCE GROUP
                        PROFESSIONAL LIABILITY DIVISION
                        ATTN:  CLAIMS DEPARTMENT
                        397 EAGLEVIEW BOULEVARD
                        SUITE 120
                        EXTON, PA 19342

**Section IX. General Conditions**

**A.     Assistance and Cooperation**

(1)     The **Insured** will cooperate with the **Company** and upon the **Company's** request, attend hearings, depositions, and trials, and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits and proceedings in connection with a **Claim.**

(2)     The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **Claim.**

(3)     The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment of **Claims Expenses** or **Damages**, assume or admit any liability, or incur any **Claims Expenses** or other expense without the prior written consent of the **Company.**

**B.     Action Against the Company**

(1)     No action may be brought against the **Company** unless, as a condition precedent thereto:

(a)     The **Insured** has fully complied with all the terms of this Policy; and

(b)     Until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured,** the claimant and the **Company.**

(2)     Nothing contained in this Policy will give any person or organization the right to join the **Company** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

## C.     Bankruptcy

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Company** of any of its obligations hereunder.

## D.     Other insurance

This Policy shall apply only as excess over, and shall not contribute with, any other valid and collectible policy or policies (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent, or otherwise.  This Policy will not be subject to the terms of any other insurance.

## E.     Subrogation

In the event of any payment for any **Claim** under this Policy, the **Company** will be subrogated in the amount of such payment to all the **Insured's** rights of recovery against any person or organization. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

## F.     Changes

Notice to any agent of the **Company** or knowledge possessed by any such agent or by any other person will not constitute a waiver or a change in any part of this Policy, and will not prevent or preclude the **Company** from asserting or invoking any right or provision of this Policy. None of the provisions of this Policy will be waived, changed, or modified except by a written endorsement issued by the **Company** to form a part of this Policy.

## G.     Cancellation/Nonrenewal

(1)     This Policy may be cancelled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by giving written notice to the **Company** stating at what future date cancellation is to be effective.

(2)     The **Company** may cancel or nonrenew this Policy by sending written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least sixty (60) days before cancellation or nonrenewal is to be effective. However, if the **Company** cancels this Policy because the **Insured** has failed to pay a premium when due, this Policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation will be effective. The time of surrender of the Policy or the effective date and hour of cancellation stated in the notice will become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the **Company** will be equivalent to mailing.

(3)     If the **Company** cancels this Policy, the earned premium will be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(4)    The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, **Deductible** or premium, shall not constitute a refusal to renew or a cancellation of this Policy. The Company may not cancel this Policy prior to expiration except for non-payment of premium in accordance with paragraph G. (2) above.

## H.    Territory

This Policy applies to an act or omission taking place anywhere in the world; provided, however, this Policy shall not apply to any risk which would be in violation of the laws of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, and Commerce Department.

## I.    Named Insured Sole Agent

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this Policy, completing any applications and the making of any statements, representations, and warranties, the payment of any premium and the receipt of any return premium that may become due under this Policy, payment of the **Deductible**, and exercising or declining to exercise any right under this Policy including the purchase of an **Extended Reporting Period**.

## J.    Entire Contract

By acceptance of this Policy the **Insured** warrants that:

(1)    All of the information and statements provided to the **Company** by the **Insured**, including but not limited to, the application and any supplemental information, are true, accurate, and complete and will be deemed to constitute material representations made by the **Insured**;

(2)    This Policy is issued in reliance upon the **Insured's** representations;

(3)    This Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

(4)    Any material misrepresentation or concealment by the **Insured** or the **Insured's** agent will render the Policy null and void and relieve the **Company** from all liability herein.

## K.    Notices

Any notices required to be given by the **Insured** will be submitted in writing to the **Company** or its authorized representative at the address specified in the Declarations. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

## L.    Assignment

No assignment of interest of the **Insured** under this Policy is valid, unless the **Company's** written consent is endorsed hereon.

**M.**      **Innocent Insureds**

Whenever coverage under this Policy would not apply because of Exclusion A., such exclusion will not apply to any **Insured** who did not commit, participate in, or have knowledge of any of the acts or omissions described in Exclusion A.

**N.**      **Conformity to Law**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**O.**      **Representative of the Company**

Great American Insurance Group, Professional Liability Division, Post Office Box 66943, Chicago, Illinois, 60666 shall act on behalf of the **Company** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence.

**Section X. Service of Suit**

Pursuant to any statute of any state, territory, or district of the United States of America which makes provision therefor, the **Company** hereby designates the Commissioner, Superintendent, or Director of Insurance, or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies, as the **Company's** true and lawful attorney for service of legal process in any action, suit, or proceeding brought by or on behalf of an **Insured** or any beneficiary hereunder, arising out of this Policy.   Any legal process received by such attorney shall be forwarded to the **Company** to the attention of:

Sue Earhart
General Counsel
Great American Fidelity Insurance Company
301 E. Fourth Street
Cincinnati, OH 45202

In witness whereof the **Company** has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the **Company**.

**GREAT AMERICAN FIDELITY INSURANCE COMPANY®**

*President*                                    *Secretary*
