UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT AMERICAN FIDELITY
INSURANCE COMPANY,

    Plaintiff,

v.

STOUT RISIUS ROSS, INC., *et al.*,

    Defendants.

Case No. 19-cv-11294
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

---

**CORRECTED OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [19]**

---

Stout Risius Ross, Inc. and Stout Risius Ross, LLC (collectively "Stout"), a financial advisory firm, was hired to value the stock of a paper company. Stout was later sued for overvaluing that stock. Stout demanded coverage for the suit (and another related action) from its professional-liability insurer, Great American Fidelity Insurance Company. Great American began defending Stout in the two actions but subsequently brought this action seeking a declaration that Great American has no duty to defend or indemnify Stout or its employees in the two lawsuits. Great American has now filed a motion for partial summary judgment based on the language of the governing insurance policy. Because Great American has not met its burden of establishing it is entitled to judgment as a matter of law, the Court denies the motion.

**I.**

In its capacity as a financial advisory firm, Stout provides professional valuation services for clients across the United States. Stout was retained by the Trustees of the Appvion Retirement Savings and Employee Stock Ownership Plan ("Appvion ESOP") as its financial advisor. In that role, Stout was to provide an annual independent valuation of the stock of Paperweight

Development Corp. ("Paperweight"), Appvion's parent company. This independent valuation was required by the Employee Retirement Income Security Act of 1974 (ERISA). (ECF No. 19, PageID.538.) Appvion subsequently went bankrupt and the Appvion ESOP suffered resulting financial losses. (ECF No. 1-1, PageID.5.)

Stout (along with many others) was sued by the Appvion ESOP in federal court in the Eastern District of Wisconsin. (*See* ECF No. 19-3.) The Appvion ESOP suit alleges, in part, that Stout negligently or fraudulently appraised and overstated the value of the ESOP's stock in Paperweight, which contributed to Appvion's bankruptcy and the corresponding losses sustained by the ESOP and its participating employees. (*See* ECF No. 19-3.) The complaint includes five counts against Stout: (1) Count VIII for "knowing participation in breaches of fiduciary duty pursuant to ERISA § 502(a)(3), 28 U.S.C. § 1132(a)(2)"; (2) Count X for fraud; (3) Count XII for negligent misrepresentation; (4) Count XIII for Wisconsin securities fraud; and (5) Count XIV for federal securities fraud. (ECF No. 19-3, PageID.783–813.)

Stout was also sued by co-trustees of the Appvion Liquidating Trust ("Appvion Trust") in a Chapter 11 bankruptcy action in the United States Bankruptcy Court for the District of Delaware. (ECF No. 19-4.) The complaint alleges that Stout's flawed valuation of Paperweight stock contributed to financial losses by the plaintiffs and that Stout received greater payment than it was entitled to from the insolvent debtors. (*See* ECF No. 19-4.) The complaint includes three causes of action against Stout: (1) Count VI for "aiding and abetting breaches of the fiduciary duties of care and loyalty"; (2) Count X for avoidable preference; and (3) Count XI for avoidable transfer. (*See* ECF No. 19-4, PageID.946–947, 950–953.) In October 2019, the District of Delaware Bankruptcy Court transferred Count VI to the Eastern District of Wisconsin. (ECF No. 31-3, PageID.2353.)

Stout requested coverage for both actions under its Great American professional liability insurance policy. Stout bought this $5 million insurance policy (ECF No. 1-1) to provide defense and indemnification protections for claims arising from Stout's valuation services (ECF No. 24, PageID.1849). The policy defines covered professional services to include "valuation services." (ECF No. 1-1, PageID.27.) The policy also includes a number of exclusions. The exclusion at issue in this case is Exclusion F. In relevant part, Exclusion F reads as follows:

> "This Policy does not apply to any Claim . . . based on or arising out of actual or alleged violation of . . . (1) The Employee Retirement Income Security Act of 1974; (2) The Securities Act of 1933; (3) The Securities Act of 1934; (4) Any state Blue Sky or Securities law; . . . or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations, including any Claim based upon common law principles of liability."

(ECF No. 1-1, PageID.52.)

Great American agreed to defend Stout in the two Appvion actions, subject to a full reservation of rights. (ECF No. 1, PageID.14.) Great American then brought this suit against Stout and six individual defendants (Stout employees and their spouses) who were sued in the Appvion ESOP action. Great American asks the Court to declare that the Great American policy provides no coverage for, and that the company has no duty to defend or indemnify, any of the Stout defendants in connection with the two underlying actions. Great American also requested reimbursement for all amounts expended to defend Stout and the individual defendants.

Motion practice ensued prior to any discovery. The six individual defendants filed a motion to dismiss for lack of personal jurisdiction. (ECF No. 14.) Great American then filed a motion for partial summary judgment as to the Stout entities only. (ECF No. 19.) Finally, Stout filed a motion to stay the proceeding while awaiting a decision on its pending motion to dismiss in the Appvion ESOP case. (ECF No. 27.) After hearing oral argument on all three motions, the Court granted the

motion to dismiss and denied the motion to stay. (ECF No. 35.) The Court now addresses the motion for partial summary judgment.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing that there is no material factual dispute rests with the movant, Great American. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). If the moving party satisfies this initial burden, "the non-moving party must then 'come forward with specific facts showing that there is a genuine issue for trial.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

The parties agree that Michigan law applies to the determination of Great American's coverage obligations.

## III.

Great American says that it has no duty to defend or indemnify the Stout corporate entities in the underlying Appvion ESOP action, and had no duty to defend Stout in the Appvion Trust action prior to October 23, 2019, because each of the underlying claims is excluded from coverage. Great American argues that all of the underlying claims fall under Exclusion F of Stout's insurance policy because each claim is "based on or arising out of actual or alleged violation" of either ERISA or securities laws. (ECF No. 1-1, PageID.52.)

## A.

Because the duty to defend is broader than the duty to indemnify, *see Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996), the Court begins by analyzing whether Great American has a duty to defend Stout.

Under Michigan law, an insurance company has a duty to defend if the underlying claim is actually, or even arguably, covered by the policy. *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737 (Mich. 1989); *see also Auto Club Grp. Ins. Co. v. Burchell*, 642 N.W.2d 406, 412 (Mich. Ct. App. 2001) ("It is well established that an insurer has a duty to defend an insured and that such duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." (internal citations omitted)). Additionally, so long as one claim in the lawsuit falls within the policy, an insurer has a duty to defend all the claims in the lawsuit. *See Auto Club*, 642 N.W.2d at 412 (citing *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981)). So to determine whether Great American has a duty to defend Stout, the Court must decide whether any of the underlying claims are even arguably covered by the policy.

Great American argues that it is beyond debate that all underlying claims fall under Exclusion F. In its view, each claim is clearly "based on or arising out of" either an ERISA violation or a securities law violation. Stout argues that the exclusion is ambiguous and that under at least one reading of the exclusion, one (or more) of the underlying claims arguably falls outside the exclusion. So the Court will next consider whether that language is actually ambiguous.

Stout first points to the final clause of Exclusion F, "including any Claim based upon common law principles of liability," as ambiguous and inconsistent with the previous clause. But

5

Great American does not seek summary judgment based on this clause, so any possible ambiguity there is irrelevant.

Stout also argues that Exclusion F is ambiguous because it conflicts with other sections of the policy. *See Wagner v. Farm Bureau Mut. Ins. Co. of Mich.*, 908 N.W.2d 327, 331 (Mich. Ct. App. 2017) ("A contract is ambiguous if [its] provisions irreconcilably conflict."). But Stout does not actually point to any irreconcilable conflict.

Finally, Stout points to two cases in which U.S. Courts of Appeals found insurance-policy exclusions to be ambiguous. But *Illinois Union Insurance Co. v. Shefchuk*, 108 F. App'x 294, at *6 (6th Cir. 2004), is not on point; the court there found an exclusion to be illogical or ambiguous because the language as written excluded only claims that were both negligent and not negligent (an impossibility). *Scottsdale Insurance Co. v. Byrne*, 913 F.3d 221 (1st Cir. 2019), is better for Stout but still off point. In *Scottsdale*, the First Circuit found that an ERISA exclusion was ambiguous because it did not "explicitly remove preempted state law claims from the Policy's coverage." 913 F.3d at 230. Like Great American, the insurance company in *Scottsdale* argued that "because the negligence and ERISA claims arise from the same set of facts, the negligence claim is therefore preempted by ERISA." *Id.* Where the cases differ, though, is in the precise language of the ERISA exclusion. While Great American's policy excludes any claim "based on or arising out of" an ERISA violation, Scottsdale's policy excluded claims "for any actual or alleged violation" of ERISA. *Id.* at 225–26. Because Great American argues that it is precisely the "based on or arising out of" language that brings the common-law claims against Stout under the ERISA exclusion, the reasoning of *Scottsdale* is not directly applicable.

For its part, Great American disagrees with Stout's assertion that Exclusion F is ambiguous. It says that the key language of the exclusion—"based on or arising out of actual or alleged violation of"—is clear.

To analyze the ERISA and securities law exclusions contained in Exclusion F, and more specifically, to determine the meaning of "based on or arising out of," the Court turns to the law of contract interpretation.

Great American focuses in its brief on defining "arising out of." "Arising out of" is generally understood to mean "'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to or having a connection with.'" *Assurance Co. of Am. v. J.P. Structures, Inc.*, 132 F.3d 32, 1997 WL 764498, at *5 (6th Cir. Dec. 3, 1997) (unpublished table opinion) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liability Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951)). The Michigan Supreme Court has opined that something that "arises out of, or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *People v. Johnson*, 712 N.W.2d 703, 706 (Mich. 2006) (internal quotations omitted). Michigan courts have further explained that "arising out of" "requires more than an incidental, fortuitous, or but-for causal connection, but does not require direct or proximate causation." *Scott v. State Farm Mutual Auto. Ins. Co.*, 751 N.W.2d 51, 56 (Mich. Ct. App. 2008), *leave denied on reconsideration*, 766 N.W.2d 273 (Mich. 2009).

Although the Michigan courts have not specifically taken up defining the term, Black's Law Dictionary defines "base on" as "to use (something) as the thing from which something else is developed." BASE, Black's Law Dictionary (11th ed. 2019).

7

Under Michigan law, "In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." *Am. Bumper*, 550 N.W.2d at 481 (quoting *Protective Nat'l Ins. Co. v. City of Woodhaven*, 476 N.W.2d 374, 376 (Mich. 1991)). But courts must "enforce the terms of the contract as written." *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991). And terms should be interpreted "in accordance with their commonly used meanings." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999). A court must also decide "whether an insurance policy is clear and unambiguous on its face." *Upjohn*, 476 N.W.2d at 397. And although courts must construe ambiguous language in favor of the insured, courts may not create ambiguities where none exist. *City of Warren v. Int'l Ins. Co. of Hannover, Ltd.*, 524 F. App'x 254, 257 (6th Cir. 2013) (citing *Fire Ins. Exchange v. Diehl*, 545 N.W.2d 602, 606 (Mich. 1996); *Edgar's Warehouse, Inc. v. United States Fid. & Guar. Co.*, 134 N.W.2d 746, 748 (Mich. 1965)). "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017).

Although the precise definition of "based on or arising out of" could be articulated in different ways, the phrase is not ambiguous such that it is susceptible to more than one meaning. The essence of the phrase is that there is a cause-and-effect relationship. So for a claim to be based on or arising out of a legal violation, the legal violation must cause the claim to occur. Considering the above, the Court finds that the term "based on or arising out of" is not ambiguous and has been given a clear meaning under Michigan law.

**1.**

But the analysis does not end simply because Stout's arguments do not carry the day. After all, it is Great American that seeks summary judgment. And so it must discharge its burden of showing that every reasonable jury would find that the underlying claims clearly fall outside the plain meaning of the policy. So the Court turns to an analysis of whether the underlying claims in each suit can arguably escape the plain language of the exclusion. When examining the underlying claims, the Court looks at the substance of the complaint and basis for the injuries "rather than simply the nomenclature." *Auto Club*, 642 N.W.2d at 412; *see also Grp. Ins. Co. of Mich. v. Czopek*, 489 N.W.2d 444, 450 (Mich. 1992).

Great American argues that the ERISA policy exclusion applies to all underlying claims because "[b]oth lawsuits are based on and arise out of Stout Risius' engagement by the ESOP trustees to determine the fair market value of the stock held by an ERISA-governed plan in accordance with Title I of ERISA." (ECF No. 19, PageID.549.)

In support of its argument, Great American points to three cases, none of which are factually analogous to the instant case (nor do they apply Michigan law). In *Cape Coral Medical Center, Inc. v. American Continental Insurance Co.*, No. 98-230, 2000 WL 151275, at *1 (M.D. Fla. Feb. 4, 2000), all of the underlying claims were based on an employee pension plan and "predicated explicitly or by the clearest of implication upon ERISA." In *Zurich Insurance Co. v. Texasgulf, Inc.*, 649 N.Y.S.2d 153, 153 (N.Y. App. Div. 1996), the underlying judgment was "expressly based on ERISA liability only." And similarly, in *Lifeline Health Group, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 665 F. Supp. 2d 770 (W.D. Ky. 2009), the underlying complaints "expressly allege[d] a violation of the responsibilities, obligations or duties imposed by ERISA." In contrast, in this case Great American alleges that the ERISA exclusion applies not

9

only to underlying claims based explicitly on ERISA, but also on common-law claims that arise from the same general set of facts.

As an alternative argument, Great American contends that the counts in the Appvion ESOP action (but not the Appvion Trust action) indisputably fall under Exclusion F because they are based on or arising out of actual or alleged violations of securities laws. Great American states that because the ESOP action contains two counts for securities fraud, the other Wisconsin counts also arise out of a securities law violation because they are based on the same set of facts.

The premise of this argument is essentially the same as Great American's argument for the scope of the ERISA exclusion. But Great American cites to three additional cases to support its argument in the context of a securities exclusion. In *Isroff v. Federal Insurance Co.*, 25 F.3d 1048, 1994 WL 253027, at *2 (6th Cir. June 8, 1994) (unpublished table opinion) and *Bendis v. Federal Insurance Co.*, 958 F.2d 960, 961 (10th Cir. 1991), the courts found that a securities exclusion applied to other statutory and common-law causes of action in the complaint. But the policy language at issue in those cases was much broader and is not comparable to the policy in this case. In contrast to Great American's use of "based on or arising out of," the policies in *Isroff* and *Bendis* excluded coverage "where all or part of such claim is, directly or indirectly, based on, attributable to, arising out of, resulting from or in any manner related to any actual or alleged violation" of securities laws. *See* 1994 WL 253027, at *1; 958 F.2d at 961. Although *Salomon v. Philadelphia Insurance Companies*, No. 13-10378, 2014 WL 294320 (D. Mass. Jan. 23, 2014), is more factually analogous to the instant case, it must also be distinguished because the underlying policy language is different. The *Salomon* policy excluded claims "arising out of an actual or alleged violation" of securities laws, but also "for any claim based upon common law principles of liability if made in

10

connection with an actual or alleged violation of any law listed." *Id.* at *4 (internal quotations omitted).

Stout has not moved for summary judgment, but instead emphasizes that Great American has failed to show that there is not a single theory of liability in either action that even arguably falls within the policy's coverage and outside of the exclusions. And if Great American cannot establish as a matter of law that *all* of the underlying claims in each action are clearly excluded from coverage, it cannot win summary judgment and must continue to defend Stout. *See Auto Club*, 642 N.W.2d at 412 ("[A]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." (internal citations omitted)).

**2.**

Beginning with the Appvion ESOP action, Great American argues that the ERISA exclusion applies to the common-law claims of negligent misrepresentation and fraud because they arise from the same general set of facts: that Stout was hired by an ERISA-governed plan to make valuations in accordance with ERISA. (ECF No. 19, PageID.549.)

And Great American makes essentially the same argument for the securities exclusion. Count XIII for Wisconsin securities fraud and Count XIV for federal securities fraud clearly fall under Exclusion F because they directly allege that Stout committed securities fraud under state and federal law by falsely representing the fair market value of stock. (ECF No. 19-3, PageID.808–813.) But Great American further argues that the other Wisconsin counts also arise out of a securities law violation because they are based on the same set of facts. (ECF No. 19, PageID.554.)

Great American centers its arguments on the idea that "based upon or arising out of" should be interpreted broadly. As a general matter, this is correct. *See Hantz Fin. Servs., Inc. v. Nat'l*

11

*Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 1089, 1094 (E.D. Mich. 2015); *Lafarge Midwest, Inc. v. Frankenmuth Mut. Ins. Co.*, No. 253591, 2005 WL 1923158, at *2 (Mich. Ct. App. Aug. 11, 2005) ("the phrase 'arising out of . . .' is expansive"); *Mariners Inn v. Darwin Nat'l Assurance Co.*, No. 10-13552, 2011 WL 13217652, at *3 (E.D. Mich. May 19, 2011) ("The phrase 'arising from' or 'arising out of' appears to have a broader, more inclusive meaning than 'for.'").

But the Great American policy language states that a claim is excluded if it is "based on or arises out of an actual or alleged *violation*" of ERISA or securities law. (ECF No. 1-1, PageID.52 (emphasis added).) Great American's suggestion that "based on or arising out of" should be interpreted so broadly as to include all claims that arise out of the same set of facts ignores the plain meaning of the policy language. Under a commonsense reading of the language of Exclusion F, for a claim to be excluded it must be based on or arise out of a *violation of ERISA or securities law*. In other words, as discussed above, a violation of ERISA must have caused Stout to commit negligence and/or fraud.

In Count X for fraud and Count XII for negligent misrepresentation, the plaintiffs in the underlying suit allege essentially the same facts: that Stout knew that its valuation analyses contained significant flaws and so it knew (or had reasonable grounds to believe) the stock prices it provided to ESOP were not accurate. (ECF No. 19-3, PageID.796–797.) The plaintiffs further allege that the ESOP justifiably relied on Stout's valuations and was damaged. (ECF No. 19-3, PageID.797.)

Great American explains the connection between these counts and an ERISA violation as follows: ERISA imposed a fiduciary obligation on the ESOP trustees to value Paperweight stock and so the ESOP trustees hired Stout to conduct this valuation. (ECF No. 19, PageID.549.) Although this could arguably explain how the fraud and negligent misrepresentation arise out of

12

ERISA, it does nothing to explain how the counts arise out of an ERISA *violation*. (*See* ECF No. 1-1, PageID.52 ("This Policy does not apply to any Claim . . . based on or arising out of actual or alleged violation of . . . The Employee Retirement Income Security Act of 1974.").)

Although there is one count in the Appvion ESOP case that seems to allege a violation of ERISA by Stout (Count VIII for "knowing participation in breaches of fiduciary duty pursuant to ERISA")[1], Great American does not attempt to argue that the common-law claims are specifically based on or arise out of that count. And the facts alleged in the Appvion ESOP complaint do not suggest that Stout's alleged "knowing participation in breaches of fiduciary duty" caused the fraud or negligent misrepresentation. (*See* ECF No. 19-3, PageID.783.)

Similarly, in order for the common-law fraud and negligent misrepresentation claims to fall under the securities law provision of Exclusion F, Great American must demonstrate that they are based on or arise out of a violation of securities law. Being based on the same underlying factual scenario is not sufficient. And Great American has not argued that Stout's alleged common-law fraud or negligent misrepresentation arose from a securities violation. It instead seems more likely that the alleged securities violations arose from the fraud or negligent misrepresentation.

Great American has failed to carry its burden of showing as a matter of law that Exclusion F applies to Count X for fraud and Count XII for negligent misrepresentation in the underlying Appvion ESOP action and thus cannot establish it has no duty to defend Stout in the action.

---

[1] During oral argument Stout argued that this claim cannot be "based on or arising out of ERISA" because it is actually a non-viable claim since there is no such cause of action. But because the Court finds Great American has a duty to defend based on the fraud and negligence claims, the Court need not address this issue.

13

**3.**

Turning to the Appvion Trust action, Great American similarly argues that the three underlying claims fall under Exclusion F because they are based on or arising out of the same facts as the Appvion ESOP action—stock valuations made by Stout for an ERISA-governed plan (the ESOP). (ECF No. 19, PageID.549.)

This argument is subject to the same flaw as the Court discussed above—in order to fall under Exclusion F, Great American must demonstrate as a matter of law that the underlying claims are based on or arising out of a *violation* of ERISA. Great American has failed to make such a showing as a matter of law.

Turning to the underlying complaint, two of the claims in the Appvion Trust action are bankruptcy-specific causes of action for avoidable preference and avoidable transfer.

Count X for avoidable preference alleges that Stout received payment from Appvion for its stock valuation services while Appvion was insolvent and as a result Stout received more money than it would have received under Chapter 7. (ECF No. 19-4, PageID.950–951.) Similarly, Count XI for avoidable transfer alleges that Stout received transfers from Appvion while Appvion was insolvent which were fraudulent as to present and future creditors. (ECF No. 19-4, PageID.952.) As Great American explained, the only connection between these counts and ERISA is that Appvion is an ERISA-governed ESOP and Stout was hired to do valuations required by ERISA. Any connection between these bankruptcy counts and an alleged ERISA violation by Stout or any of the plan fiduciaries is too remote to establish that the claims are based on or arising out of an ERISA violation.

Great American has failed to show that each of the underlying claims in the Appvion Trust action falls within Exclusion F. So the Court cannot find as a matter of law that Great American had no duty to defend Stout in the Appvion Trust action prior to October 23, 2019.

**B.**

Great American also asks the Court to declare that it has no duty to indemnify Stout for damages in the Appvion ESOP action. Stout counters that this question is not ripe for adjudication because the underlying claims are still being litigated in the U.S. District Court for the Eastern District of Wisconsin.

Courts can generally only adjudicate a claim on its merits if it is ripe. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). "A claim is unripe when it is anchored in future events that may not occur as anticipated, or at all." *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) (internal citations omitted). Courts have discretion to consider whether the issues are appropriate for judicial resolution and "the degree of 'hardship to the parties if judicial relief is denied.'" *Id.* (quoting *Young v. Klutznick*, 652 F.2d 617, 625 (6th Cir. 1981)). Applying this doctrine to indemnification claims, the Sixth Circuit recently held that, except in certain special circumstances, "a claim for indemnification for damages that may be awarded on an underlying tort claim should not be adjudicated on the merits until the underlying claim is adjudicated." *Jackson*, 925 F.3d at 807–08; *see also Safety Nat'l Cas. Corp. v. Am. Special Risk Ins. Co.*, 99 F. App'x 41, 43 (6th Cir. 2004) (finding unripe a claim of indemnification for fraudulent conveyance because, among other reasons, the underlying claim for fraudulent conveyance had not yet been adjudicated).

Stout correctly points out that the underlying claims in the Appvion ESOP case have not yet been adjudicated. In fact, Stout has filed a motion to dismiss those claims, which is currently

pending before the court in Wisconsin. *See Appvion Inc. Ret. Savs. and Emp. Stock Ownership Plan v. Buth*, No. 18-01861 (E.D. Wis. filed Nov. 26, 2018) (ECF No. 107). Stout also notes that the Great American insurance policy states that Great American must indemnify for damages "that the Insured becomes legally obligated to pay." (ECF No. 1-1, PageID.38.) At this time, Stout is not obligated to pay any amount to the plaintiffs in the Appvion ESOP action. The claims against Stout in the Appvion ESOP action may ultimately be dismissed and the question of indemnification by Great American would become moot.

Consideration of the discretionary factors also weighs in favor of finding the question of indemnification is unripe. First, neither party has briefed the question of whether Exclusion F, as interpreted by this Court, applies to each of the underlying claims in the Appvion ESOP action. Second, neither party will suffer hardship if the question of indemnification is dismissed for the time being. There are currently no damages owed by Stout which Great American would be asked to indemnify. Although the question of indemnification may be an issue in the future, it is also possible that the question will never ripen.

### IV.

Because Great American has failed to meet its burden of establishing as a matter of law that it has no duty to defend Stout in two underlying actions, Great American's motion for partial summary judgment (ECF No. 19) is DENIED. And because the issue is not ripe, the Court will DISMISS WITHOUT PREJUDICE Great American's request for a declaratory judgment on the question of whether Great American has a duty to indemnify Stout in the underlying claims.

SO ORDERED.

Dated: February 14, 2020

                                       s/Laurie J. Michelson
                                       LAURIE J. MICHELSON
                                       UNITED STATES DISTRICT JUDGE