UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT AMERICAN FIDELITY
INSURANCE COMPANY,

    Plaintiff,

v.

STOUT RISIUS ROSS, INC.,

    Defendant.

Case No. 19-11294
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART
GREAT AMERICAN'S MOTION FOR PARTIAL JUDGMENT ON
ITS SIXTH AND EIGHTH CAUSES OF ACTION [62]**

Great American Fidelity Insurance Company issued an insurance policy to Stout Risius Ross, Inc., a financial advisory firm. To oversimplify a bit, Great American agreed to defend and indemnify Stout in litigation involving Stout's valuation services, subject to certain exclusions. Stout was subsequently sued in a case involving its appraisal of stock, and Great American offered to defend it, subject to a full reservation of rights. In 2019, as indicated by its reservation of rights, Great American asked this Court to declare that it had no duty to defend or indemnify Stout in the underlying litigation.

Following multiple rounds of motion practice and opinions from the Court, the case is in its final stretch. One of those opinions found that, after certain activity in the underlying litigation, Great American no longer owed a duty to defend. Thus, Great American now asks the Court to award it reimbursement of the

defense costs it expended on behalf of Stout in the underlying case. For the reasons explained more thoroughly below, the Court will grant in part Great American's motion.

## I. Background

The Court has already ruled on a few key issues in this case, including on Great American's duty to defend Stout. (*See* ECF Nos. 35, 37, 53.) As these rulings provide context for the current motion, the Court will summarize them.

### A. Underlying Litigation

But first, a reminder of the basic facts of the underlying litigation.

Stout provides professional valuation services for clients across the United States. (ECF No. 65, PageID.5856.) Stout was retained by the Trustees of the Appvion Retirement Savings and Employee Stock Ownership Plan ("Appvion ESOP") as its financial advisor. (*Id.* at PageID.5858.) In that role, Stout was to provide an annual independent valuation of the stock of Paperweight Development Corp., Appvion's parent company. (ECF No. 62, PageID.4925.) This independent valuation was required by the Employee Retirement Income Security Act of 1974 (ERISA). (ECF No. 19, PageID.538.) Appvion subsequently went bankrupt and the Appvion ESOP accordingly suffered financial losses. (ECF No. 62-3, PageID.5095–5096.)

The Appvion ESOP believed that Stout negligently or fraudulently appraised and overstated the value of the ESOP's stock in Paperweight, which contributed to Appvion's bankruptcy and the corresponding losses sustained by the ESOP and its

2

participating employees. (*See* ECF No. 62-3.) So the Appvion ESOP sued Stout and many other entities in the United States District Court for the Eastern District of Wisconsin. (*See* ECF Nos. 62-2, 62-3.)

Stout was also sued by co-trustees of the Appvion Liquidating Trust ("Appvion Trust") in a Chapter 11 bankruptcy action in the United States Bankruptcy Court for the District of Delaware. (ECF No. 19-4.)[1]

### B. Great American's Complaint

Great American agreed to defend Stout in both actions subject to a full reservation of rights. (ECF No. 62-6, PageID.5784.) Great American specified in a letter to Stout that its reservation of rights included "the right to seek reimbursement from the Stout defendants, or any of them, if it should be determined that Great American had no obligation to defend them, to pay indemnity, or to defend or indemnify them against certain claims." (*Id.*)

Great American then brought this suit against Stout and six individual defendants (Stout employees and their spouses) who were sued in the Appvion ESOP action. (ECF No. 1.) Great American asked the Court to declare that the Great American policy provides no coverage for—and that the company has no duty to defend or indemnify—any of the Stout defendants in connection with either Appvion case. Great American also requested reimbursement for all amounts already expended to defend Stout and the individual defendants.

---

[1] The parties have since informed the Court that the Appvion Trust litigation has settled and was dismissed based on a stipulated order from the parties. (*See* ECF No. 65, PageID.5857.) But Great American's claims based on the Appvion Trust action have not been dismissed from this case.

3

The six individual defendants moved to dismiss for lack of personal jurisdiction. (ECF No. 14.) The Court granted the motion to dismiss (ECF No. 35), leaving only Stout as a defendant.

**C. Great American's First Motion for Partial Summary Judgment**

As for Stout, Great American moved for partial summary judgment asking the Court to declare that it had no duty to defend or indemnify Stout in the underlying cases. The Court denied Great American's motion without prejudice. (ECF No. 37.)

In considering this motion, the Court interpreted an exclusion in the insurance policy between Great American and Stout, "Exclusion F." Exclusion F stated, "This Policy does not apply to any Claim . . . based on or arising out of actual or alleged violation of . . . (1) The Employee Retirement Income Security Act of 1974; (2) The Securities Act of 1933; (3) The Securities Act of 1934; (4) Any state Blue Sky or Securities law; . . . or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations, including any Claim based upon common law principles of liability." (ECF No. 1-1, PageID.52.)

The Court found that Great American had failed to carry its burden of showing as a matter of law that Exclusion F applied to at least two of the underlying claims in the Appvion ESOP action because they were state-law tort claims, and to at least two of the underlying claims in the Appvion Trust action because they were bankruptcy claims. *Great Am. Fid. Ins. Co. v. Stout Risius Ross,*

4

*Inc.*, 438 F. Supp. 3d 779, 788 (E.D. Mich. 2020). And a duty to defend against some of the claims meant a duty to defend against the entire action. *Id.* at 786. So the Court concluded that it "cannot find as a matter of law that Great American had no duty to defend Stout" in the underlying actions. *Id.* at 788–89.

The Court also found that the indemnification issue was not ripe for adjudication, so it dismissed without prejudice Great American's request for a declaratory judgment stating that it had no duty to indemnify Stout in the underlying litigation. *Id.* at 789.

### D. Great American's Renewed Motion for Partial Summary Judgment

After the Court denied Great American's initial motion for summary judgment, there were a few developments in the Appvion ESOP action. Relevant here, the Eastern District of Wisconsin dismissed the first amended complaint, which was the complaint this Court evaluated when it denied summary judgment to Great American. The Appvion ESOP plaintiffs then filed a second amended complaint on September 25, 2020, which only alleged one claim against Stout for "Federal Securities Fraud." (ECF No. 62-5, PageID.5722.)

Based on the second amended complaint, Great American renewed its motion for partial summary judgment, asking the Court to declare that Great American no longer had a duty to defend or to indemnify Stout in the Appvion ESOP action as of the date of the second amended complaint. (ECF No. 48.)

The Court granted Great American's renewed motion. *Great Am. Fidelity Ins. Co. v. Stout Risius Ross, Inc.*, No.19-cv-11294, 2021 WL 3772876 (E.D. Mich. Aug.

5

23, 2021). It reasoned that the Appvion ESOP plaintiffs only alleged a violation of federal securities law against Stout, so "all claims against Stout in the underlying action fall within policy exclusion F and thus Great American has no duty to defend or indemnify Stout in the underlying action" as of September 25, 2020. *Id.* at *4.

### E. Great American's Pending Motion for Summary Judgment

That order settled the period during which Great American had a duty to defend or to indemnify Stout in the Appvion ESOP action, but it did not settle the issue of reimbursement. Given this Court's opinion that Great American no longer had a duty to defend, Great American asks to be reimbursed for defense costs expended after the amended complaint was filed in the Appvion ESOP action. (ECF No. 62.) Also, just to preserve the issue for appeal, Great American seeks reimbursement for defense costs expended before that amended complaint was filed.

Given the adequate briefing, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f). And for the reasons set forth below, the Court will grant in part Great American's motion for summary judgment on reimbursement.

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of*

6

*Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Or, stated less formally, Great American is entitled to summary judgment only if no reasonable jury could find in favor of Stout. *See Anderson*, 477 U.S. at 251–52.

### III.

As noted, Great American asks for reimbursement of the defense costs it expended for the Appvion ESOP litigation. Great American was no longer obligated to defend Stout in the Appvion ESOP litigation as of September 25, 2020 (ECF No. 53), so the Court will separately address the issues of reimbursement of costs before and after that date.

### A.

Start with the defense costs expended before September 25, 2020.

Great American recognized that the Court has already ruled that it had a duty to defend Stout in the Appvion ESOP litigation prior to September 25, 2020. Great American explained that it raises this reimbursement argument only "for jurisdictional purposes . . . in order to preserve its right to seek reimbursement for the pre-September 25, 2020 amounts in the event this Court's ruling on Great American's first motion for partial summary judgment were to be overturned on appeal and remanded." (ECF No. 62, PageID.4921–4922 n.1.)

Given the Court's prior ruling on Great American's duty to defend Stout prior to September 25, 2020 (ECF No. 37), and that Great American merely raises its right to reimbursement of these costs to preserve the issue for appeal, the Court will

7

deny Great American's motion on this issue. Great American is not entitled to reimbursement of the defense costs it expended in the Appvion ESOP action prior to September 25, 2020.

### B.

The reimbursement of costs after September 25, 2020 is slightly more complicated. The dispute itself is simple, however—Great American believes it is entitled to reimbursement of the defense costs it expended when it did not have a duty to defend Stout based on a theory of implied-in-fact contract or unjust enrichment, and Stout believes the opposite.

The parties agree, though, that Michigan law applies to Great American's claims, including its claims of reimbursement. And they agree that the Michigan Supreme Court has not definitively addressed or spoken on whether an insurer is entitled to reimbursement of defense costs after a finding that it does not have a duty to defend.

The Sixth Circuit, however, has addressed this issue and found that Michigan law would allow reimbursement in these circumstances. Following its lead, the Court finds that Great American is entitled to reimbursement of the defense costs it expended when it no longer had a duty to defend Stout.

In *Continental Casualty Company v. Indian Head Industries, Inc.*, for reasons that are not relevant here, the Sixth Circuit affirmed the district court's finding that an insurance company was not obligated to pay the entirety of its insured's defense costs or to indemnify it completely. *See* 666 F. App'x 456, 459, 465 (6th Cir.

2016). But the insurer had already made payments in excess of what the Court found was required. So the Sixth Circuit then faced the same question currently before this Court: should it require the insured to reimburse the insurance company for the excess payments it made based on an implied contract under Michigan law?

The Sixth Circuit answered in the affirmative. *Id.* at 460. Applying Michigan law, the Sixth Circuit found that "it was proper for the district court to find Continental is entitled to reimbursement as an implied contract existed between the two parties." 666 F. App'x at 468. This conclusion aligned with the Sixth Circuit's prior rulings that both Ohio and Kentucky law would allow for reimbursement based on a theory of implied contract. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 269 (6th Cir. 2010) (applying Kentucky law).

Though the Sixth Circuit found that the parties in *Continental* had entered into both an implied-in-fact and an implied-in-law contract for reimbursement of defense costs, the Court focuses on the implied-in-fact analysis as it is most relevant here.

In finding that an implied-in-fact contract existed between the parties, the Sixth Circuit stated that "the majority of jurisdictions have held that an insurer is entitled to reimbursement under an implied-in-fact contract where the insurer: 1) timely and explicitly reserves its rights to reimbursement; and 2) provides sufficient notice of the specific possibility of reimbursement." 666 F. App'x at 468 (citing

9

*United Nat'l Ins. Co. v. SST Fitness Corp,* 309 F.3d 914, 919 (6th Cir. 2002)); *see also Erickson v. Goodell Oil Co.,* 180 N.W.2d 798, 800 (Mich. 1970) ("A contract [is] implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction."). Applying this standard, the Court found that an implied-in-fact contract existed between the parties because "Continental expressly reserved its rights in a letter that plainly stated to Indian Head that Continental would seek reimbursement" and the district court only granted reimbursement for claims brought after the reservation of rights, so the reservation was timely. *Id.*

Similarly here, Great American explicitly reserved its right to reimbursement and notified Stout of the "specific possibility of reimbursement." In its reservation-of-rights letter, Great American wrote that its reservation included "the right to seek reimbursement from the Stout defendants, or any of them, if it should be determined that Great American had no obligation to defend them, to pay indemnity, or to defend or indemnify them against certain claims." (ECF No. 62-6, PageID.5784.) And such notice was timely. The letter was sent March 6, 2019 (ECF No. 62-6, PageID.5783), and Great American asks for reimbursement of costs after September 25, 2020, the date of the amended complaint in the Appvion ESOP litigation. So Great American seeks reimbursement for claims brought well after its reservation of rights. And Stout does not argue or present evidence that it rejected

10

or objected to the terms of Great American's offer to tender a defense, or that it otherwise did not accept a defense from Great American. Thus, just as the Sixth Circuit concluded in *Continental*, the Court finds that there was an implied-in-fact contract between the parties for reimbursement of defense costs in the event that Great American did not have a duty to defend. *See* 666 F. App'x at 468; *see also United Nat'l Ins. Co.*, 309 F.3d at 920 ("United National timely and explicitly reserved its right to recoup defense costs because United National notified SST of the reservation, in a letter dated January 21, 1997, prior to payment of the defense costs.").

Resisting this conclusion, Stout points out that other jurisdictions have prohibited an insurer from seeking reimbursement absent a contractual provision in the insurance contract that allows it to do so. (ECF No. 65, PageID.5867.) The Court recognizes that reimbursement is not a settled issue in Michigan, and that there appears to be a jurisdictional split as to whether reimbursement should be allowed without an express provision in the insurance contract. *See, e.g.*, *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1004 (Ill. 2005) ("[W]e acknowledge that a majority of jurisdictions have held that an insurer is entitled to reimbursement of defense costs . . . . We choose, however, to follow the minority rule and refuse to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties."); *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 719 (8th Cir. 2009) (finding that Minnesota law would not allow reimbursement

11

absent a contractual right to do so in the policy); *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 529 (Penn. 2010) ("[A]n insurer is not entitled to be reimbursed for defense costs absent an express provision in the written insurance contract.").

But the Court is not deciding this issue in the first instance. The Sixth Circuit has already determined that Michigan law would allow for reimbursement in cases where an insurer pays defense costs in excess of what it was required to under the policy, despite the policy containing no express provision allowing reimbursement. *See Continental Casualty Company v. Indian Head Indus, Inc.*, 666 F. App'x 456, 468 (6th Cir. 2016). That decision is binding on this Court absent any contrary developments in the Michigan courts. And the Court is aware of no Michigan precedent to the contrary. *Cf. Hastings Mut. Ins. Co. v. Mosher Dolan Cataldo & Kelly, Inc.*, 856 N.W.2d 550 (Mich. 2014) (addressing insurer's responsibilities where there was a duty to defend); *NCMIC Ins. Co. v. Dailey*, No. 267801, 2006 WL 2035597, at *6 (Mich. Ct. App. July 20, 2006) (addressing remedies for fraud in an application for insurance where the court rescinded the insurance contract).

Further, the Sixth Circuit has consistently found a right to reimbursement for insurers in these circumstances. *See United Nat'l Ins. Co.*, 309 F.3d at 921 ("We agree that allowing an insurer to recover under an implied in fact contract theory so long as the insurer timely and explicitly reserved its right to recoup the costs and provided specific and adequate notice of the possibility of reimbursement promotes

the policy of ensuring defenses are afforded even in questionable cases. When an insurer conditions payment of defense costs on the condition of reimbursement if the insurer had no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment."). So the decisions from other state supreme courts or federal circuits do not persuade this Court to find otherwise.

Stout also argues that "[o]bviously, an insurer cannot unilaterally amend a policy or create a new contractual right to reimbursement by simply sending notice of an intent to seek reimbursement upon a favorable coverage ruling." (ECF No. 65, PageID.5870–5871.) The Sixth Circuit has rejected that a reservation-of-rights letter results in a unilateral amendment of the insurance policy. Instead, says the Sixth Circuit, "the parties entered into a new agreement in which [insurer] offered defense costs subject to potential reimbursement and [insured] accepted that offer by accepting the defense costs." *United Nat'l Ins. Co.*, 309 F.3d at 920. In other words, the insurance policy is a contract about specific claims that are covered under the policy, while the reservation of rights applies to claims that are not covered. Thus, the reservation of rights does not modify the original agreement. *See Continental Casualty Co.*, 666 F. App'x at 468 (rejecting insured's argument that an implied contract cannot coexist with an express contract on the same subject, stating that "an implied contract existed as to coverage that was excluded from the original insurance policies. It is on this basis that reimbursement was applied").

In sum, the Court finds that Great American is entitled to reimbursement of the defense costs it expended for the Appvion ESOP litigation on or after September 25, 2020 based on an implied-in-fact contract between the parties.

## IV.

Thus, the Court DENIES Great American summary judgment on either cause of action for costs expended before September 25, 2020.

But Great American's motion for partial summary judgment is GRANTED IN PART. The Court grants Great American summary judgment on its sixth cause of action, which raises reimbursement on the basis of an implied-in-fact contract, for defense costs expended in the Appvion ESOP action on or after September 25, 2020. Great American requests reimbursement of $60,486.34 for this period.

The Court denies as moot summary judgment on Great American's eighth cause of action as it requests reimbursement of defense costs based on a theory of unjust enrichment. As the Court already awarded Great American post-September 25, 2020 defense costs based on an implied-in-fact contract, it does not reach the issue of unjust enrichment.

Once the remaining claims involving the Appvion Trust action are resolved, the Court will enter judgment.

SO ORDERED.

Dated: November 1, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE